UNITED STATES of America for the Use and Benefit of CRANE COMPANY, t/a Cochrane Environmental Systems, an Illinois Corporation, Plaintiff,

v.

PROGRESSIVE ENTERPRISES, INC., and Fidelity and Deposit Company of Maryland, Defendants.

Civ. A. No. 75–125–NN.

United States District Court,
E. D. Virginia,
Newport News Division.

Aug. 23, 1976.

---

Stuart L. Nachman, Steingold, Steingold & Friedman, Norfolk, Va., for plaintiff.

Alvin B. Fox, Ellenson, Fox & Wittan, Inc., Newport News, Va., for defendants.

## OPINION AND ORDER

CLARKE, District Judge.

This action was brought to recover the unpaid balance allegedly due for the purchase of a cast iron deaerator supplied by the plaintiff, Crane Company [hereinafter referred to as "Crane"], to the defendant, Progressive Enterprises, Inc. [hereinafter referred to as "Progressive"] to be installed as part of defendant's contract with the United States. Jurisdiction of the District Court is based upon the Miller Act, 40 U.S.C. § 270b(a) and (b).

The material facts of the case are not in serious dispute. Plaintiff, on May 3, 1974, submitted a written proposal to furnish the machine to defendant for $5238.00, the price quoted as firm for acceptance within fifteen days. After the expiration of the fifteen-day period, Progressive submitted its bid dated June 7, 1974, for the government contract without arranging for an extension of the fifteen-day period. Progressive was awarded the government contract on June 14, 1974. Shortly thereafter, on June 17, 1974, Progressive verified the continued effectiveness of the quoted price for a thirty-day period. On July 1, 1974, Progressive accepted the offer to sell by submission of a purchase order. (The price agreed to at that time was $5217.00 because of the exclusion of a part included in the original price quotation.)

Crane, through its authorized selling agent, Hawkins-Hamilton Co., advised Progressive that "[b]ecause of rapidly escalating material costs, your purchase order can only be accepted subject to current price in effect at time of shipment." This communication went on to quote a current price of $7350.00.

The parties agree that the July 1, 1974 purchase order was an effective acceptance of Crane's offer to sell. However, apparently without protest to or discussion with Crane or its agent, Progressive agreed to the higher price and, on August 7, 1974, submitted a second purchase order for the machine, this time at $7350.00. Thereafter, the machine was delivered and Progressive paid $5,550.88 and asserted the balance not to be due because the increased price was not a valid modification of the contract. Crane then instituted this suit to recover $2,218.32 plus interest from March 2, 1975, representing the difference between the higher agreed price with interest and the amount paid by the defendant.

Crane contends that Progressive acquiesced in the increased price and that the August 7, 1974, purchase order effectively modified the existing contract. Section 2–209 of the Uniform Commercial Code (Virginia Code § 8.2–209) provides:

(1) An agreement modifying a contract within this Article needs no consideration to be binding.

This change from the common law of contracts supports the common business prac-

tice of adjusting the terms of agreements as conditions change.

The ability to modify a sales agreement is limited by the general U.C.C. requirement of good faith.[1] Official Comment 2 to § 2–209 clearly expresses this requirement and elaborates on its meaning in the context of contract modifications:

> The effective use of bad faith to escape performance on the original contract terms is barred, and the extortion of a "modification" without legitimate commercial reason is ineffective as a violation of the duty of good faith. Nor can a mere technical consideration support a modification made in bad faith.
>
> . . . But such matters as a market shift which makes performance come to involve a loss may provide such a reason even though there is no such unforeseen difficulty as would make out a legal excuse from performance under Sections 2–615 and 2–616.

The letters of May 3 and July 11, 1974, from Crane's agent support a finding that the seller's costs had increased, justifying a request for modification of the price to Progressive. Although Progressive possessed the contractual right to refuse to modify and to demand performance on the original terms, it failed to do so and gave objective assent to the higher price.

Notwithstanding this objective assent and apparent modification, it is the contention of Progressive that the modification of the contract price was the result of economic duress and, hence, unenforceable. This claim is based upon its obligation under its contract with the United States Government to supply the ordered machine within a specific time and the fact that Crane was the only supplier of the exact machine required to fulfill the Government contract.

The evidence reveals, however, that in making its bid to the Government, Progressive was not relying on the lower price quoted because the time period for acceptance had expired. Thus, Progressive is not in the position of a contractor who justifiably relied on a price quotation only to find itself squeezed by repudiation of the quoted price.

The evidence shows further that Progressive at no time protested the increased price, or in any way attempted to enforce the terms of the earlier, lower price contract.

In *Austin Instrument, Inc. v. Loral Corp.*, 29 N.Y.2d 124, 324 N.Y.S.2d 22, 272 N.E.2d 533 (1971), a closely divided New York Court of Appeals discussed the defense of economic duress and gave judgment to the buyer in a situation similar to the one at bar. In that case, however, the buyer communicated the facts of its predicament and warned that the modification was accepted only because there existed no alternative. Similarly, in *Rose v. Vulcan Materials Co.*, 282 N.C. 643, 194 S.E.2d 521 (1973), cited by Progressive, the buyer expressly reserved the right to sue for the overcharges. Such situations, where the inability to obtain alternative sources of supply is communicated, are more analogous to the seeking of cover from the only available source, the original seller. Where no such protest or notice is given, the seller has no idea that anything other than a new contract has been made. If the buyer wishes not to accede to the increased demand, the seller must be dealt with honestly to be able to consider other possibilities.

In the context of a lengthy, on-going business relationship, seeking modification of a sales price is not uncommon and, given increased costs, is a fair method of doing business in order to preserve the desirability of the relationship for both parties. In such a situation, the parties must be able to rely on objective, unequivocal manifestations of assent. The secret intention of Progressive never to pay the higher price (as admitted by its president) is hardly in keeping with the good faith requirement of the U.C.C. of honesty in fact. If a seller in this situation cannot enforce such a modification, sought in good faith and objec-

---

**1.** "Good faith" in the case of a merchant means honesty in fact and the observance of reasonable commercial standards of fair dealing in the trade. U.C.C. § 2–103(b).

tively agreed to, the provisions of U.C.C. § 2–209(1) would be hollow indeed. To avoid this predicament, the buyer must at least display some protest against the higher price in order to put the seller on notice that the modification is not freely entered into.

■ The availability of equitable relief belies Progressive's claim that it had no available remedies if it desired to enforce the original terms. Also, notification to Crane of the possible damages because of the threatened breach could have led to withdrawal of the requested increase. In any case, Progressive did nothing to alert Crane to the possibility that it did not mean what it said. Accordingly, it must be held to its agreement.

By reason of the foregoing, it is hereby ORDERED that judgment be entered for the plaintiff in the amount of $2,218.32 plus interest from March 2, 1975, against both defendants, the Fidelity and Deposit Company of Maryland being surety on Progressive's Miller Act bond.