**FRATELLI GARDINO, S.p.A.,**
**Plaintiff-Appellee,**

v.

**CARIBBEAN LUMBER CO., INC.,**
**Defendant-Appellant.**

**No. 78–1750**
**Summary Calendar.***

United States Court of Appeals,
Fifth Circuit.

Jan. 3, 1979.

Rehearing and Rehearing En Banc
Denied Feb. 9, 1979.

---

* Rule 18, 5 Cir.; *see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.,* 5 Cir., 1970, 431 F.2d 409, Part I.

Charles Rippin, Dorothy W. Courington, Edward T. Brennan, Savannah, Ga., for defendant-appellant.

Hunter, Houlihan, Maclean, Exley, Dunn & Connerat, Arnold C. Young, Robert S. Glenn, Jr., Savannah, Ga., for plaintiff-appellee.

Before THORNBERRY, GODBOLD and RUBIN, Circuit Judges.

THORNBERRY, Circuit Judge:

This is a diversity case. Fratelli Gardino, an Italian corporation, brought this action against Caribbean Lumber Company, a Connecticut corporation, seeking damages for breach of contract. After a jury trial, in which substantial damages were awarded against Caribbean, the trial judge granted the defendant's motion for a remittitur. The defendant now complains that the trial judge erred in failing to grant a new trial, in computing the amount of the remittitur, in awarding attorney's fees, and in allowing the jury to compute damages from the first contract made between the parties. The facts of this case are more fully recited in the district court's opinion reported at 447 F.Supp. 1337 (S.D.Ga.1978).

The defendant and the plaintiff are both in the business of selling lumber. In December 1972 the parties began negotiations that eventually ended in a contract being made between them. The contract provided that defendant was to sell plaintiff 525,-000 board feet of (MBF) Honduran pine FAS[1] Puerto Cortes, Honduras. The lumber was to be kiln-dried and the agreed price was $175 MBF for two inch pine and $185 MBF for two and one-half inch and three inch pine. This lumber was to be delivered in six shipments between January and June of 1973. The date of this contract was January 29, 1973.

During the contract period, Gardino received one shipment of 15,000 board feet of lumber—far short of the agreed amount. In June, 1973 Mr. Gardino, president of the plaintiff, and the president of Caribbean held a meeting to renegotiate the contract. This meeting took place in New York, and as a result, a new contract was consummated. This contract, made on June 11, 1973, for the sale of 510 MBF of Honduran pine included a $67.50 per thousand board feet price increase. This contract is a fully enforceable contract, and no party suggests otherwise. See Ga.Code Ann. § 109A–2–209; *United States for Use and Benefit of Crane Company v. Progressive Enterprises, Inc.*, 418 F.Supp. 662 (E.D.Va.1976).

The defendant shipped only 46 MBF of pine to Gardino and this suit followed. At trial, Caribbean defended on the ground of commercial impracticability because it claimed that the necessary CTE[2] vessels did not have space available to ship Gardino's lumber. However, the evidence at trial showed that Caribbean had a sister company—Wood Products—that was able to secure cargo space and had no difficulty filling many of its orders. The evidence also showed that Wood Products sold at a significantly higher price than Caribbean. Given this evidence, the jury's rejection of Caribbean's commercial impracticability defense will not be disturbed here. See *Swift Textiles, Inc. v. Lawson*, 135 Ga.App. 799, 219 S.E.2d 167 (1975).

Next, Caribbean argues that the trial judge erred in computing the remittitur. The defendant would have us review the trial judge's computation as if he were making determinations of law; clearly, this is not our task. The standard for review of a granting of a remittitur is that the trial judge will be reversed only for an abuse of discretion. *Gleason v. Hall*, 555 F.2d 514, 520 (5 Cir. 1977). The defendant has not carried its burden on this score.

The defendant also complains that the trial court erred when it allowed the jury to assess attorney fees against it. Since this is a contract action, attorney fees

---

1. *See* Ga.Code Ann. § 109A–2–319.

2. Compania Transatlantica Espanola, S.A. (CTE). As reported by the district court, CTE is the only shipping line serving Honduras and Genoa.

are not favored, but Ga.Code Ann. § 20–1404 allows attorney fees when the defendant has acted in bad faith or has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense. The trial judge stated in his memorandum opinion that the evidence presented justified a jury in awarding attorney fees because the defendant had been guilty of bad faith in failing to secure cargo space for the lumber. 447 F.Supp. at 1341. We agree and conclude that the evidence supports this finding.

Finally, the defendant argues that the damage calculation improperly considers the January contract price. As a preliminary matter, the plaintiff suggests that appellate review of this point is precluded by the defendant's failure to object to an exhibit that contained the plaintiff's damage computations.[3] See Carpa Inc. v. Ward Foods, Inc. 536 F.2d 39, 53 (5 Cir. 1977). While the matter is not free from doubt, we must agree with the trial judge's sub silentio determination [4] that the issue is worthy of review.

Since the original complaint sought damages based on the June contract price, the trial judge charged the jury that the plaintiff was seeking $59,000 in damages. The plaintiff objected to this charge and stated to the trial judge that its exhibit had been based on a damage calculation using the January contract price. The trial judge termed the plaintiff's damage proof "ambiguous" but nevertheless charged the jury on the plaintiff's January price theory. In the second charge the trial judge expressed uncertainty about the plaintiff's theory and warned the jury that the contract damages

must never be punitive. The trial judge also allowed the plaintiff to file a post-trial amendment conforming the plaintiff's prayer for damage to the plaintiff's proof at trial.[5]

Given the fact of the changed theory, the ambiguous nature of the proof and the uncertainty of the trial judge in his supplementary charge, we conclude that the defendant's argument should be reached despite its failure to object to the plaintiff's exhibit. See Berryhill v. Richplan of Pensacola, 578 F.2d 1092, 1101 (5 Cir. 1978).

All the parties agree that the measure of the buyer's damage is the "difference between the market price at the time when the buyer learned of the breach and the contract price together with any incidental and consequential damages provided in this Article, (109A–2–715), but less expenses saved in consequence of the seller's breach." Ga.Code Ann. § 109A–2–713.

The parties disagree, however, as to which contract price should be used in the damage calculations—the January price or the June price.

The trial court found that the jury was entitled to use the January contract price because the June Modification was effective only on the condition of performance of the modified contract. The trial court relied upon three early Georgia cases [6] that would appear to support his conclusions. However, we find that these cases are not dispositive in light of the changes brought on by Georgia's adoption of the Uniform Commercial Code. Before the adoption of the Code, consideration was required before a contract could be modified. The consideration was often thought to be the perform-

---

3. Plaintiff's exhibit no. 88 also contained damage computations based on the June contract price.

4. The plaintiff also argued to the trial judge that the defendant had not objected to the exhibit containing the plaintiff's theory of damage. Nevertheless, the trial judge, in his post-judgment memorandum, reached the merits of the defendant's argument without mentioning the defendant's failure to object.

5. We cannot help observing that what appears to be a rather straight forward lawsuit—an action for breach of contract, has been made infinitely more difficult by the plaintiff's attempt to transform this action into a tort action.

6. Bernhardt v. Federal Terra Cotta Co., 24 Ga. App. 635, 636, 101 S.E. 588 (1919); Hardwood Lumber Co. v. Adam & Steinbrugge, 134 Ga. 821(6), 68 S.E. 725 (1910); Georgia Creosoting Co. v. McIntosh Land and Timber Co., 23 Ga. App. 561(1), 99 S.E. 166 (1919).

ance of the modified contract, hence, a modified contract that was not performed had no consideration and the first contract was still effective. Georgia and other states called these modifications "mere agreements of accord" or "accord executory".[7] Distinguished from the agreements of accord or the accord executory was the modified contract fully supported by consideration. These modified contracts were complete within themselves and they served to extinguish all rights under the first contract. Moreover, the remedy for breach of this second contract was based on the second contract. A prominent example can be found in *Byrd Printing Co. v. Whitaker Paper Co.*, 135 Ga. 865, 70 S.E. 798, 800 (1911):

> The written contract entered into between the Whitaker Company and the Byrd Printing Company, of February 19, 1907, was not a mere agreement of accord which would have become a satisfaction of the former matters in the controversy between the parties, upon the performance of the agreement; but was itself a complete accord and satisfaction. This contract included not only new terms, but a new consideration. Civil Code 1910, § 4326. The original controversy between the parties both as to the car of paper that had been shipped by the plaintiff and received by the defendant, and as to the two cars ordered by the defendant but not shipped by the plaintiff, was absolutely extinguished by the last contract

entered into on February 19, 1907; and the respective rights of the parties were thereafter dependent upon the terms of that contract, which the uncontradicted evidence showed the plaintiff's agent was authorized to execute in its behalf.

■ Since the Uniform Commercial Code is unequivocal that consideration is not needed to modify a contract,[8] we believe that the principles stated in the pre-code cases finding consideration govern today's case. The cases relied on by the district court are not consistent with the Code view that a contract modification needs no consideration to be valid.

A leading case from another circuit confirms our view. *In M. W. Zack Co. v. R. D. Werner Co.*, 222 F.2d 634 (6 Cir. 1955), M. W. Zack Co. had contracted to supply the plaintiff with metal ingots but was unable to supply the ingots, and the parties made a second contract providing for a higher price for the ingots. Zack also defaulted on this contract. The Sixth Circuit held that the relevant contract on which to base damages was the second contract.[9]

■ The plaintiff also suggests that under the UCC a seller who "extorts" a contract modification or acts in bad faith in securing the modified contract is not able to reap the fruits of his misdeeds and the original contract price will apply in the damage calculation. With this statement, we have no quarrel.[10] However, the plain-

---

7. *See* Corbin on Contracts § 1293.

8. 109A–2–209 Modification, rescission and waiver

    (1) An agreement modifying a contract within this Article needs no consideration to be binding.

9. *See also* Corbin on Contracts § 1293:

    If the substituted contract has itself been broken by either party, the other party's rights are dependent on the substituted contract. The breach has often been held not to revive the former discharged claim. [citing cases]

10. Comment 2 to 2–209 states:

    Subsection (1) provides that an agreement modifying a sales contract needs no consideration to be binding.

However, modifications made thereunder must meet the test of good faith imposed by this Act. The effective use of bad faith to escape performance on the original contract terms is barred, and the extortion of a "modification" without legitimate commercial reason is ineffective as a violation of the duty of good faith. Nor can a mere technical consideration support a modification made in bad faith.

The test of "good faith" between merchants or as against merchants includes "observance of reasonable commercial standards of fair dealing in the trade" (Section 2–103), and may in some situations require an objectively demonstrable reason for seeking a modification. But such matters as a market shift which makes performance come to involve a loss may provide such a reason even though there is no such unforeseen difficulty as

tiff cannot bring his proof within this rule. The plaintiff's complaint stated "that the defendant failed to undertake, in good faith, efforts to secure cargo space for shipments of Honduras pine." There was no proof offered that the modified contract was a product of extortion or bad faith. The proof that the defendant, in bad faith, failed to secure cargo space on the CTE vessels will not serve to show that the defendant secured the second contract by extortion.

 We therefore conclude that the jury violated the first rule of contract damages—contract damages are not punitive—in awarding damages based on the January contract price. The damage for an inadvertent contract breach is the same as the damage for the most egregious and deliberate breach. We do not look to the motive of the state of mind of the defaulting party in determining contract damages, but rather, we look to the amount of money that will make the injured party whole. The plaintiff will be made whole by an award of damages based on the enforceable June contract. The damage award is reversed and the case is remanded to the district court with instructions to enter an award based on the June contract price. The district court is affirmed in all other respects.

AFFIRMED in part; REVERSED AND REMANDED in part.

would make out a legal excuse from performance under Sections 2–615 and 2–616.

* Rule 18, 5 Cir.; *see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.,* 5 Cir., 1970, 431 F.2d 409, Part I.