**73667. NEW YORK INSURANCE COMPANY et al. v. WILLETT.**

(360 SE2d 37)

BEASLEY, Judge.

This is an appeal by defendant joint venturers, collectively "Village Square-Nautilus," from the denial of their motion for new trial following an unfavorable jury verdict and judgment in a suit by Willett to recover money paid to defendants pursuant to a sales contract for the purchase of certain real property.

The evidence is construed most strongly in favor of the jury verdict. *Stern's Gallery of Gifts v. Corp. Property Investors,* 176 Ga. App. 586, 592 (3) (337 SE2d 29) (1985). In the fall of 1979, Willett, owner of a number of car dealerships in Atlanta, acquired by assignment from one Willey, the rights to a contract to purchase real estate from Village Square-Nautilus on which Willett intended to construct and operate an automobile dealership, service department, and body shop. The contract was contingent on the purchaser's being able to use the property for its intended use, a car dealership, as of the date of closing; the property containing not less than five and one-half acres usable by the purchaser after grading; and the purchaser's being able to obtain satisfactory financing. If satisfactory financing was available and the seller so notified, the purchaser was to deposit $40,000 earnest money out of a $320,000 purchase price with the seller and the seller was to proceed immediately to grade the property and perform the site preparation. If satisfactory financing was not available and the seller so notified, the contract would be null and void and the earnest money refunded to the purchaser.

Willett encountered difficulty obtaining permanent financing and in 1980, prior to any grading of the property, he discussed the problem with Hicks, one of the partners in the joint venture. Hicks told Willett that if he wanted the property and wanted the grading to start, he would have to show good faith by giving him the $40,000 in earnest money even though under the contract terms it was not yet due. Willett agreed to pay the sum and in exchange obtained from the partnership, through Hicks, a commitment for some interim short-term financing. Willett understood that such financing was not a substitute for permanent financing but merely was to serve until other monies could be obtained. A letter from Hicks to Willett purported to amend the sales contract to reflect the interim financing agreement and to set a closing date of May 15, 1980. Willett's understanding was that other provisions of the contract remained intact including the

contingencies of obtaining permanent financing, that the parcel would contain the specified amount of usable acreage, and that he had the option to withdraw the $40,000 at any time. He continued to attempt to obtain permanent financing.

Around May 10, 1980, after completion of the grading of the property, Willett contracted with a civil engineer to go out and survey it to make certain that there was 5.5 acres of usable land and that the grading was satisfactory. Willett did not attend the May 15 scheduled closing because the permanent financing problem continued and the survey of the land was not yet completed. A new date was set for the closing.

The civil engineer reported to Willett that the land had less usable acreage than that specified in the contract, some of the grading did not comply with the specifications, some trees had not been planted, and some drainage work yet needed to be done. Still attempting to complete the land transaction, Willett met with Hicks to discuss the problems that the survey had disclosed. Shortly thereafter, Willett received a summons of garnishment against another member of the partnership. Though concerned, Willett still did not attempt to end the transaction but had his counsel write to counsel for the seller addressing the problems with the deal.

On the same date of that communication, seller's counsel wrote Willett that because he (Willett) had not been in a position to close the transaction on May 15, and no meeting had been effected to extend the contract, the seller was declaring the contract null and void; neither party was to have a claim upon the other, and the $40,000 in earnest money would be retained by the seller. Willett's counsel responded that since seller had declared the contract null and void, etc., Willett withdrew any offer to continue the contractual arrangements and demanded the immediate refund of the earnest money. Seller refused to return the earnest money.

Willett filed the present suit in June 1980, for return of the earnest money and for the expenses of litigation under OCGA § 13-6-11, including attorney fees in the amount of $10,000. Village Square-Nautilus counterclaimed for dismissal of the complaint, damages of no less than $43,347.27 (the amount defendants claimed it cost to grade the property less the earnest money retained, $83,347.27 - $40,000), and interest and expenses of litigation pursuant to OCGA § 13-6-11. The case was tried, five and one-half years after the filing of the complaint. The jury returned a verdict for plaintiff in the sum of $40,000 plus the legal rate of interest and all attorney fees, an amount of $13,016.94. The trial court entered judgment accordingly but reduced the attorney fees to $12,016.94 after consideration of defendants' motion for judgment notwithstanding the verdict.

1. Village Square-Nautilus complains that the trial court in effect

directed a verdict against the counterclaim without allowing presentation of evidence to support it. The contention is that the trial court erroneously found as a matter of law that the joint venturers' remedy was limited to Paragraph 10 of the sales contract: "In the event the Purchaser fails to close this purchase according to the terms hereof, the extent of their loss or damage shall be a forfeiture of the Earnest Money and nothing else . . ." even though Willett insisted the contract had been rescinded. Also contended is that thereafter counsel attempted on several occasions to introduce evidence of additional damages and attorney fees incurred in prosecuting the counterclaim but that the court sustained all of plaintiff's objections to the introduction of any such evidence.

The now objected-to rulings occurred during defendants' examination of Hicks. The defense attempted to introduce into evidence checks and invoices documenting expenses that defendants allegedly incurred in the preparation of the property for sale. Plaintiff objected to the exhibits on the basis of the limitation in Paragraph 10, i.e., that defendants should not be allowed to tender evidence in support of amounts not recoverable by them pursuant to the default provision in the contract. The court indicated it would reserve its ruling, and the direct examination of Hicks continued. Defendants' counsel asked Hicks, "Did you ever authorize or tell Mr. Willett that you wanted to rescind the contract and return the earnest money?" Hicks responded, "No." Counsel continued to attempt to elicit testimony from Hicks regarding the expenses incurred by the joint venture. Plaintiff renewed his objection.

Following a colloquy among the court and counsel, outside the presence of the jury, the court ruled that it would let defendants explore the amount of damages suffered but would limit that under Paragraph 10 to recovery of the amount of the $40,000 earnest money plus any attorney fees if the jury should find bad faith on the part of plaintiff in regard to the counterclaim. Defendants did not object. The jury was brought back in and the questioning of Hicks resumed.

Hicks was asked about the total loss suffered by Village Square-Nautilus as a result of their attempt to go forward with the contract. Plaintiff objected to testimony in excess of the $40,000 limitation on recovery. The court ruled that the witness could be asked if the losses in performing the contract exceeded or equalled $40,000. Hicks' testimony continued until plaintiff objected to a question about incurred attorney fees which was sustained by the court. Defendants made no objection to the ruling and announced that there were no further questions of Hicks on direct examination.

To begin with, defendants acquiesced at trial to the now objected-to rulings. They cannot now complain. *Boatner v. Kandul*, 180 Ga. App. 234 (3) (348 SE2d 753) (1986). Moreover, defendants were

allowed to present to the jury substantial testimony regarding the damages sought in the counterclaim. Furthermore, defendants contended all during the trial that the contract had not been rescinded. Hicks even testified to that effect. Rather they contended that the contract was in force and that Willett had breached it. Under the terms of the contract their recovery was limited to the amount of the earnest money. Finally, defendants never submitted a written request to charge the jury on rescission of contract (plaintiff did but it was withdrawn) and the jury was not so charged. Even if defendants had lodged proper objection to the evidentiary rulings they could not have been harmed thereby because they did not request that the jury be instructed on any theory of recovery which would make relevant any expenses incurred in preparing the property for sale to Willett.

2. Appellants enumerate that the trial court erred in refusing to direct a verdict in their favor as to Willett's claim for attorney fees under OCGA § 13-6-11. They assert that there was no evidence that they acted in bad faith in entering the contract or were stubbornly litigious in defending themselves.

In considering the propriety of an award of attorney fees on appeal, the judgment should be affirmed if there is any evidence to support it unless it can be said as a matter of law that there was a reasonable defense. *Ken-Mar Constr. v. Bowen*, 245 Ga. 676 (266 SE2d 796) (1980). From the evidence in the record and as outlined above, the jury would have been authorized to find that there was no bona fide controversy or that defendants acted in bad faith in that there was no contractual or equitable basis for defendants to have retained Willett's earnest money. Therefore the trial court was correct in refusing to direct a verdict for defendants as to plaintiff's OCGA § 13-6-11 claim.

3. Village Square-Nautilus contends that the trial court erred in excluding from evidence certain correspondence between counsel for the parties which it asserts "[e]stablished that some of Willett's stated reasons for failing to close may have been fabricated by Willett's attorneys."

Willett's counsel objected to introduction into evidence of the letter on the basis that it was a communication between counsel with reference to the case and that it was not relevant to any issue in the case. Defendants' counsel responded that a portion of the letter "referring to bad title defense" was a clear admission by an agent of Willett against Willett's interest and was admissible on that basis as an exception to the hearsay rule.

Pretermitting the question of whether or not such letter was admissible, we are unable to perceive that defendants were harmed by its exclusion, for the legitimacy of a "bad title defense" was irrelevant inasmuch as Willett did not present such a defense at trial. Without

harm, there can be no reversible error. "This court is not an expounder of theoretical law but it administers practical law, and corrects only such errors as have practically wronged the complaining party. [Cit.]" *Best Concrete Prods. Co. v. Medusa Corp.*, 157 Ga. App. 97, 102 (5) (276 SE2d 147) (1981).

4. Appellants contend that the trial court erred in denying their motion for new trial. We have addressed all but one of the points raised by defendants' motion for new trial in Divisions 1 and 2; appellants have failed to address, either by presentation of authority or argument, the remaining point in their motion for new trial, i.e., that the verdict was contrary to the law and the evidence at trial. Therefore we deem this issue abandoned on appeal. Court of Appeals Rule 15 (c) (2); *Melton v. Gilleland & Sons*, 176 Ga. App. 390 (1) (336 SE2d 315) (1985).

5. Appellee Willett has asked this court to award him damages for delay pursuant to OCGA § 5-6-6. See *St. Amour v. Roberts*, 170 Ga. App. 717, 718 (318 SE2d 313) (1984). Appellant's contention that the contract had been modified by the provision of a firm closing date and payment of the $40,000 earnest money raised legitimate questions concerning the continued effectiveness of paragraph 10 of the contract. The several issues raised on appeal are not so entirely meritless as to justify an award of a delay penalty. Therefore we deny appellee's request.

*Judgment affirmed. McMurray, P. J., and Sognier, J., concur.*

DECIDED JULY 8, 1987 —
REHEARING DENIED JULY 22, 1987.

*E. Kendrick Smith*, for appellants.
*Michael J. Elsberry*, for appellee.