959 F.2d 189
 LaROCHE INDUSTRIES, INC., Plaintiff-Counter-defendant,
Appellant, Cross-Appellee,
v.
AIG RISK MANAGEMENT, INC., National Union Fire Insurance
Company of Pittsburgh, Pa., Birmingham Fire
Insurance Company of Pennsylvania,
Defendants-Counter-claimants,
Appellees, Cross-Appellants.
 No. 90-9149.
 United States Court of Appeals,
Eleventh Circuit.
 April 22, 1992.
Rehearing Denied May 28, 1992.
 
 Jones, Day, Reavis & Pogue, Donald A. Loft, L. Trammell Newton, Jr., Atlanta, Ga., for plaintiff-counter-defendant, appellant, cross-appellee.
 Branch, Pike, Ganz & O'Callaghan, James Herrell Rollins, Regina Benton Reid, Atlanta, Ga., for defendants-counter-claimants, appellees, cross-appellants.
 Appeals from the United States District Court for the Northern District of Georgia.
 Before BIRCH, Circuit Judge, TUTTLE, Senior Circuit Judge, and FULLAM*, Senior District Judge.
 BIRCH, Circuit Judge:
 
 
 1
 In this diversity case the district court granted the defendant-insurers' JNOV motion, effectively reversing the jury's finding that the insurers committed the tort of conversion under Georgia law and the jury's punitive damages award based thereon. However, the district court refused to grant the defendants' JNOV motion with respect to the jury's award to the plaintiff-insured of attorneys' fees and litigation expenses. We find that the district court correctly held the defendants' conduct not to constitute conversion, and we AFFIRM its JNOV order. Additionally, we AFFIRM the district court's denial of the defendants' JNOV motion regarding attorneys' fees.
 
 I. FACTUAL AND PROCEDURAL BACKGROUND
 
 2
 The dispute resulting in this litigation arose from the relationship between LaRoche Industries, Inc. ("LaRoche") and its insurers AIG Risk Management, Inc., National Union Fire Insurance Company of Pittsburgh, Pa., and Birmingham Fire Insurance Company of Pennsylvania, all of which are subsidiaries or otherwise affiliated with American International Group, Inc. (hereinafter collectively referred to as "AIG"). LaRoche's insurance policies with AIG were part of a self-insured retention ("SIR") program under which LaRoche was responsible for either the first $1 million or the first $500,000 (the "SIR limits") of covered claims, depending on the type of claim.
 
 
 3
 In order to obtain insurance coverage in April, 1986, LaRoche paid a cash premium, established a special claims payment account from which to pay claims within the SIR limits (referred to as the "zero balance account"), and deposited $2 million into a cash escrow fund to be held by AIG for the purpose of paying those claims within the SIR limits in the event that LaRoche were to become insolvent. AIG commingled LaRoche's escrowed funds with its funds and invested them for its own account. The parties entered an agreement which set the return on LaRoche's funds at a fixed rate of 7% interest to be compounded monthly and paid to LaRoche quarterly. During the year in which AIG insured LaRoche, LaRoche regularly funded the zero balance account and AIG used the funds to pay claims up to the SIR limits. After the policy expired, LaRoche stopped funding this account, and AIG paid the remaining claims out of the cash escrow fund.
 
 
 4
 AIG tendered the accrued 7% interest to LaRoche through December, 1986. Thereafter, however, AIG credited LaRoche on its books with the accrued interest but refused to tender the money. Instead, AIG commingled the accrued interest with its funds, investing it for its own benefit. After writing nine letters to AIG requesting delivery of its accrued interest and receiving no response, LaRoche filed suit against AIG.
 
 
 5
 At trial, LaRoche claimed that AIG breached the contract between the parties by failing to return all or part of the cash escrow fund after the expiration of the policies and by failing to pay over accrued interest on the cash escrow fund. Further, LaRoche asserted that AIG was liable for conversion of its funds, entitling LaRoche to recover punitive damages. LaRoche also made claims for prejudgment interest, litigation expenses, and attorneys fees.
 
 
 6
 By special verdict, the jury found that AIG had breached its contractual obligation to pay LaRoche the 7% accrued interest, requiring AIG to pay $310,000.00 in compensatory damages. Additionally, the jury found that AIG's failure to deliver the interest funds to LaRoche constituted conversion and entitled LaRoche to $5 million in punitive damages. LaRoche was also awarded $250,000.00 for attorney's fees and expenses. In response to the special verdict, the court entered a declaratory judgment prescribing the time and manner in which AIG must refund the balance of LaRoche's cash escrow account.
 
 
 7
 After the trial, the district court granted AIG's JNOV motion, effectively setting aside the jury's punitive damages award and reversing the jury's conclusion that AIG's withholding of LaRoche's accrued interest constituted the tort of conversion. LaRoche now appeals the district court's JNOV order, and AIG cross-appeals with respect to the attorneys' fees and expenses award.
 
 II. DISCUSSION
 A. Punitive Damages Based On Conversion
 
 8
 In this appeal, LaRoche complains that the district court erred as a matter of law by holding that AIG's failure to pay LaRoche quarterly the accrued interest was not a tortious conversion, but merely a breach of contract unable to support a punitive damages award. We review the district court's grant of a judgment notwithstanding the verdict to determine whether the facts and inferences point so strongly and overwhelmingly in favor of one party that reasonable jurors could not arrive at a contrary verdict. See Iervolino v. Delta Airlines, 796 F.2d 1408, 1418-19 (11th Cir.1986), cert. denied, 479 U.S. 1090, 107 S.Ct. 1300, 94 L.Ed.2d 155 (1987). Moreover, the present appeal involves a JNOV granted on the basis of a legal conclusion; therefore, we will affirm the district court's JNOV if the "jury's factual findings ... cannot support the legal conclusions which necessarily were drawn by the jury in forming its verdict." Verdegaal Bros., Inc. v. Union Oil Co., 814 F.2d 628, 631 (Fed.Cir.), cert. denied, 484 U.S. 827, 108 S.Ct. 95, 98 L.Ed.2d 56 (1987).
 
 
 9
 In order for LaRoche to succeed in its appeal, we must conclude that AIG's refusal to pay over to LaRoche its 7% interest on the cash escrow account constituted the tort of conversion under Georgia law. LaRoche argues that when AIG failed to pay the accrued interest funds on LaRoche's cash escrow account as promised, AIG also breached an independent tort duty not to interfere wrongfully with and exercise dominion over LaRoche's property. Such interference, LaRoche alleges, gives rise to a claim for conversion, supporting a punitive damages award.
 
 
 10
 LaRoche's argument is unconvincing. Setting aside the underlying contract between the parties, we find no independent, noncontractual duty which AIG could have violated by refusing to pay over the interest on LaRoche's escrow account. Georgia's conversion law does not transform every breach of a contractual obligation to pay money into a tort, comprised of withholding funds and exercising dominion over them. Those cases cited by LaRoche in support of its conversion argument are clearly distinguishable on their facts from the present case. In each case, funds held by the defendant for a particular purpose were misappropriated, thereby visiting an independent, noncontractual injury on the plaintiff.
 
 
 11
 For example, the panel in Atlantic Mechanical Contractors, Inc. v. Hurston, 185 Ga.App. 511, 364 S.E.2d 638 (1988), affirmed a punitive damages award based on an employer's conversion of an employee's funds. The employer failed to pay health insurance premiums with funds withheld from the employee's paycheck specifically for that purpose. Hurston, 185 Ga.App. at 511, 364 S.E.2d at 639. Unlike the behavior of AIG, the employer in Hurston committed " 'an unauthorized appropriation.' " Id. (quoting Kornegay v. Thompson, 157 Ga.App. 558, 278 S.E.2d 140 (1981)). The employer in Hurston was a bailor or an agent of its employee because it was entrusted with the employee's money for the sole purpose of paying health insurance premiums. The relationship created between the parties gave rise to a "duty (imposed by law and not by the contract) not to convert [the employee's] funds." Id. In contrast, the present case offers facts in which AIG contracted to pay interest on an escrow account, credited LaRoche with the accrued interest on its books, but failed to pay out that interest to LaRoche. There was no tortious misuse of the funds, such as leaving health insurance premiums unpaid. AIG's misdeed was a failure to deliver the money it promised to give LaRoche--a simple breach of contract.
 
 
 12
 Another case cited by LaRoche to support its conversion theory, Charter Mortgage Co. v. Ahouse, 165 Ga.App. 497, 300 S.E.2d 328 (1983), also is distinguishable from the instant facts. Ahouse involved the misappropriation of escrowed funds which the defendant promised to use for repairs to the plaintiff's house. There, the defendant failed to make the repairs and refused to return the money. In this case, the analogous situation would be a claim for conversion based on a failure by AIG to use the cash escrow account or the zero balance account to pay the claims under the SIR limits, followed by a subsequent refusal by AIG to return the money to LaRoche. The facts relevant to this appeal do not involve a sum of money entrusted to someone for a particular purpose. Rather, this case involves the accrued interest on an escrow account which the party holding the funds agreed by contract to pay quarterly to the other party.
 
 
 13
 An illustrative analogy can be found in the depositor who places a certain sum of money into a checking account and receives a promise from the bank that it will pay a certain amount of interest on those funds. If the bank misappropriates the depositor's money in such a way that the depositor loses the benefit of her funds, this could constitute conversion. However, if the bank merely fails to pay out the depositor's interest, the bank has not committed the tort of conversion justifying punitive damages. Instead, the bank has breached the contract in which it promised to pay the checking account interest--justifying compensatory damages.
 
 
 14
 Georgia law recognizes conversion where the plaintiff's claims are to specific escrow funds and when the plaintiff seeks recovery of specific proceeds collected by the defendant and then misapplied. LaRoche, in contrast, sought recovery of a contractual obligation by AIG to pay money out of its general fund. See Management Compensation Group/Southeast, Inc. v. United Security Employee Programs, Inc., 194 Ga.App. 99, 104, 389 S.E.2d 525, 529 (1989) (holding that a claim for recovery of an amount owed to the plaintiff out of general funds, rather than specifically identified funds, does not sound in conversion). In sum, the relationship between AIG and LaRoche with respect to AIG's obligation to pay over to LaRoche quarterly interest on the cash escrow fund was purely contractual. Furthermore, because AIG owed no noncontractual duty to LaRoche to distribute the interest, there was no " 'independent injury over and above the mere disappointment of [LaRoche's] hope to receive [its] contracted for benefit.' " Long v. Jim Letts Oldsmobile, Inc., 135 Ga.App. 293, 294, 217 S.E.2d 602, 604 (1975) (quoting Orkin Exterminating Co. v. Stevens, 130 Ga.App. 363, 366, 203 S.E.2d 587, 591 (1973)).
 
 B. Attorney Fees
 
 15
 The rule in Georgia with respect to attorneys' fees and litigation cost provides that these awards are generally not allowed. See O.C.G.A. § 13-6-11 (Michie 1991). In order to fall within an exception to this rule, one must plead and prove that the opposing party acted in bad faith in the underlying transaction, was stubbornly litigious, or caused unnecessary trouble and expense in the ensuing litigation. See id.; Beacon Indus., Inc. v. Vanderbunt Concrete, Ltd., 172 Ga.App. 573, 575, 323 S.E.2d 871, 874 (1984). In reviewing the trial court's denial of AIG's JNOV motion with respect to the attorneys' fees awarded to LaRoche, we are governed by the law in Georgia which places the question of attorneys' fees within the province of the jury and provides that the court should not vacate such an award unless there was absolutely no evidence to support it. See New York Ins. Co. v. Willett, 183 Ga.App. 767, 770, 360 S.E.2d 37, 40 (1987). On this record, the district court's denial of the JNOV motion, when measured by this standard, was amply justified.
 
 
 16
 AIG argues that, regardless of the facts pertaining to its conduct, we must necessarily set aside any attorneys' fees award based on bad faith if we determine that the trial court properly concluded that AIG did not commit conversion. AIG makes this argument based upon its assertion that no bad faith determination can be found in a breach of contract claim. However, the case law indicates that Georgia applies its attorneys' fees statute to contract claims, as well as tort claims. See Fratelli Gardino, S.P.A. v. Caribbean Lumber Co., 447 F.Supp. 1337, 1340-41 (S.D.Ga.1978), aff'd in part, rev'd in part, 587 F.2d 204 (5th Cir.1979); Spicer v. American Home Assurance Co., 292 F.Supp. 27, 34 (N.D.Ga.1967), aff'd, 402 F.2d 988 (5th Cir.1968), cert. denied, 394 U.S. 946, 89 S.Ct. 1275, 22 L.Ed.2d 479 (1969). Indeed, O.C.G.A. § 13-6-11 is set forth in the Contracts title of the Georgia Code. Hence, the jury was authorized to find the requisite bad faith with respect to the contract theory and award fees on that basis alone.
 
 
 17
 Based on this reading of Georgia law and our examination of the record we conclude that LaRoche produced adequate evidence to support the jury's finding that AIG acted in bad faith with respect to its underlying dealings with LaRoche.
 
 III. CONCLUSION
 
 18
 For the reasons stated, we hold that the district court's grant of AIG's JNOV motion regarding punitive damages is AFFIRMED, and its denial of AIG's JNOV motion with respect to attorneys' fees is AFFIRMED.
 
 
 
 *
 Honorable John P. Fullam, Senior U.S. District Judge for the Eastern District of Pennsylvania, sitting by designation