A96A1516. BEASLEY et al. v. PAUL.
(478 SE2d 899)

BLACKBURN, Judge.

Maggie Lay Beasley, by her guardians Leon Beasley and Mary Ann King, appeals the grant of Steve Paul's motion for new trial after she received a jury verdict in her suit to enforce a promissory note and cancel a quitclaim deed. In the second trial, the court granted Paul's motion for directed verdict, finding that the promissory note was unenforceable because it lacked consideration, and that the quitclaim deed was invalid because it was premised upon the promissory note. Beasley also appeals the directed verdict.

1. Beasley enumerates as error the trial court's grant of Paul's motion for new trial after the jury returned a verdict in her favor at the first trial of the case. According to Beasley, because the trial court denied Paul's motions for directed verdict and j.n.o.v., it was error for the court to then grant his motion for new trial. Beasley cites no authority for her position.

The standard of review for the first grant of a new trial is clear: "[t]he first grant of a new trial shall not be disturbed by an appellate

---

court unless the appellant shows that the judge abused his discretion in granting it and that the law and facts require the verdict notwithstanding the judgment of the presiding judge." OCGA § 5-5-50.[1] Additionally, the standards for granting motions for directed verdict and j.n.o.v. are different from the standard for granting a new trial. A trial judge cannot grant motions for directed verdict or j.n.o.v. on any issue if "any evidence" exists to support that issue. See *Grubb v. Woodglenn Properties*, 220 Ga. App. 902, 903 (470 SE2d 455) (1996). By contrast, a trial judge can grant a motion for new trial if the verdict is contrary to the evidence or strongly against the weight of the evidence. See OCGA §§ 5-5-20; 5-5-21. By virtue of the difference in these standards, it is not inconceivable that in some cases, evidence would support a particular position, thereby precluding the grant of a directed verdict or j.n.o.v., yet a new trial would still be permitted because the verdict ultimately returned is contrary to or against the weight of the evidence when viewed as a whole. Therefore, Beasley's argument is without merit, and the trial judge did not abuse his discretion in granting Paul's motion for new trial notwithstanding the earlier denial of his motions for directed verdict and j.n.o.v.

2. Beasley contends that the trial court erred in directing a verdict for Paul in the second trial. "A directed verdict is authorized only when there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, shall demand a particular verdict. OCGA § 9-11-50 (a). A *grant* of directed verdict is a ruling that the evidence and all reasonable deductions therefrom *demand* a particular verdict. . . . A grant of directed verdict can be upheld only where we determine that *all* the evidence demands that verdict." (Punctuation omitted.) *Carden v. Burckhalter*, 214 Ga. App. 487, 488 (448 SE2d 251) (1994). "In determining whether any conflict in the evidence exists, the court must construe the evidence most favorably to the party opposing the motion for directed verdict." (Punctuation omitted.) *Food Lion v. Williams*, 219 Ga. App. 352, 353 (464 SE2d 913) (1995).

Applying this standard to the facts before us, the promissory note which Beasley seeks to enforce and the quitclaim deed which

---

[1] As to Beasley's unsupported contention that it is error to deny motions for directed verdict and j.n.o.v. and then grant a new trial motion, we have located but one sentence from one case addressing this situation: "[i]f neither a directed verdict nor a judgment n.o.v. is warranted, surely a defendant is not entitled to a new trial." *Associated Software &c. Organization v. Wysocki*, 177 Ga. App. 135, 137 (338 SE2d 679) (1985).

Despite this language, a complete reading of *Associated Software* reveals that it provides no support for Beasley's position, because it strongly supports the trial judge's discretion to grant or deny a new trial. Additionally, because the lower court in *Associated Software denied* the motions for directed verdict and j.n.o.v. as well as the motion for new trial, the quoted language addressing the *grant* of a new trial in such a situation is dicta. See *Associated Software*, supra.

she seeks to cancel were both executed in the course of an agreement Beasley reached with Paul to save her house from foreclosure. Paul was in the business of buying financially distressed properties, and he contacted Beasley in late August 1990 after discovering her home in a foreclosure publication. Beasley, her daughter Grace Hogan, and Paul subsequently met, and the parties established an arrangement whereby Paul would both prevent the foreclosure and afterwards permit Beasley to continue living in the house.

Although the parties dispute the exact terms of their agreement, Paul did pay Beasley's arrearage, thus preventing the foreclosure. Beasley's house was then appraised and sold to Paul, but because two separate purchase agreements were executed, the parties contest which agreement applied to the sale of the house. One purchase agreement, dated August 27, 1990, listed the purchase price as $64,500, the appraised fair market value of the house. The other purchase agreement, dated August 28, 1990, listed the purchase price as not to exceed $34,000. At the time of the sale, $32,000 was the approximate amount of Beasley's debt on the house.

After buying the house from Beasley, Paul refinanced it for 70 percent of its fair market value, paid off the first and second mortgages, and realized the leftover sum as profit. Beasley remained in the house, made monthly payments to Paul, and eventually moved out to live with her grown children. Upon realizing that no quitclaim deed had been recorded when he closed on the house in 1990, Paul requested that Beasley execute a quitclaim deed. Beasley did so, and it is this quitclaim deed that she now seeks to cancel.

We examine first the trial court's determination on directed verdict that the promissory note lacked consideration. The note's validity depends directly upon which of the two purchase agreements executed by the parties governed the sale of the house. The existence of the note is only consistent with the first purchase agreement for $64,500 dated August 27, 1990.[2] Beasley therefore argues that this agreement controlled the sale of the house.

Paul contends that he paid no more than $34,000 for the house, approximately the amount of Beasley's two mortgages, pursuant to the second purchase agreement, dated August 28, 1990. He argues that the promissory note was not part of that agreement. According to Paul, the first agreement for $64,500 was executed solely to establish the fair market value of the house for purposes of refinancing.[3]

---

[2] Beasley acknowledges through counsel that the August 27, 1990, purchase agreement is the only one which references a promissory note.

[3] There is some dispute in the evidence as to which agreement was actually executed first. Although both contracts deal with the same subject matter, neither party raised the issue of novation. See OCGA § 13-4-5. A proper novation results in the second contract

Paul testified that he executed the note only to secure Beasley's interest in the house until he could refinance the house. By subsequently satisfying Beasley's mortgages, Paul claims he canceled the note and a corresponding deed to secure debt supporting the note. Other than his payment of Beasley's mortgage, it is undisputed that Paul made no payments on the promissory note.

We agree with the trial court that the promissory note lacked consideration. At trial, Beasley testified not only that Paul did not owe her any money, but that he never had a reason to owe her any money. Paul testified that he bought the house for $34,000 under the August 28, 1990, purchase agreement, which contains no provision for a promissory note. With regard to the note, Paul's testimony reflects more of a gratuitous action than a bargained-for exchange, as he testified that he gave the note to Beasley only to protect her interest in the house until he could refinance it. Paul contends that he satisfied the note upon refinancing the house by paying off Beasley's two mortgages. The plain testimony of both parties indicates that the note is unenforceable because it lacked consideration.

Her admissions notwithstanding, Beasley makes a variety of arguments as to why the promissory note should be considered valid. First, she contends that the parol evidence rule should have blocked all testimony by Paul as to the various documents executed between the parties. "Parol contemporaneous evidence is generally inadmissible to contradict or vary the terms of a valid written instrument." OCGA § 24-6-1. However, when the consideration underlying the note is at issue, as in the instant case, "the maker of a note, when sued, has the right to show by parol, if he can, a want or failure of consideration." (Punctuation omitted.) *Craig v. C & S Nat. Bank*, 142 Ga. App. 474, 475 (236 SE2d 166) (1977); see also *Weintraub v. Cobb Bank &c. Co.*, 249 Ga. 148, 149 (288 SE2d 553) (1982) ("[p]arol evidence is admissible . . . to show want or failure of consideration"). Therefore, under the rule of *Craig*, Paul was entitled to show by parol evidence that the note was unsupported by consideration, and his testimony to this effect was properly admitted.

Parol evidence is additionally admissible "to prove the existence of any separate oral agreement as to any matter on which a document is silent, and which is not inconsistent with its terms, if from the circumstances of the case the court infers that the parties did not intend the document to be a complete and final statement of the whole of the transactions between them." (Punctuation omitted.)

superseding and replacing the first contract. See *Derosa v. Shiah*, 205 Ga. App. 106, 109 (2) (421 SE2d 718) (1992). Resolving all doubts in favor of Beasley, who argues for the earlier contract, we will presume that the August 28, 1990, purchase agreement was not a novation of the August 27, 1990, purchase agreement.

*Thomas v. Clark*, 178 Ga. App. 823, 825 (344 SE2d 754) (1986), Although numerous documents were executed by these parties concerning this transaction,[4] the trial judge found, and we agree, that because none of these documents embodied the parties' entire agreement, parol evidence was properly admitted to explain these additional agreements.

The record shows that the trial judge admitted parol evidence, solicited by Beasley's counsel, primarily to explain the following: (1) why Beasley signed over to Paul a check for $10,035.38 she received at the closing on her house, and (2) why Beasley paid over to Paul the $1,043.96 refund she received on her mortgage insurance after Paul paid off her mortgages. Only Paul testified as to these events, and according to him, the checks were signed over to him because the parties agreed that after Paul refinanced the house for 70 percent of its fair market value and paid off the two mortgages, any leftover sums were to be his profit. Because the documents executed by the parties did not embody their entire agreement, parol evidence was properly admitted to explain these particular actions.

In directing the verdict for Paul, the trial court placed special emphasis on one further action of the parties. The facts show that although Paul was allegedly obligated to pay Beasley $333.98 per month under the promissory note, Beasley never demanded these payments, and in fact made rental payments to Paul of approximately $600 per month for three to four years pursuant to a lease. "The construction placed upon a contract by the parties thereto, as shown by their acts and conduct, is entitled to much weight and may be conclusive upon them." (Punctuation omitted.) *Eickhoff v. Eickhoff*, 263 Ga. 498, 505 (6) (435 SE2d 914) (1993). The testimony of these parties and their actions plainly show that they did not intend the promissory note to be enforced.

Beasley's next argument in support of the promissory note contends that if the note fails for lack of consideration, the parties' agreements violate the Georgia Fair Business Practices Act because Paul failed to provide her with a complete written contract summarizing and incorporating the entire agreement between the parties as

---

[4] The parties executed the following documents on the following dates: a purchase agreement in the amount of $64,500 on August 27, 1990; a purchase agreement in the amount of approximately $32,000 on August 28, 1990; a warranty deed dated September 3, 1990, from Beasley to Paul; a promissory note in the amount of $32,468.83 from Paul to Beasley dated September 3, 1990; a deed to secure debt on the property for the promissory note from Paul to Beasley dated September 3, 1990; a HUD settlement statement dated September 3, 1990, listing the sale price of the property as $64,500; a loan closing statement dated September 21, 1990, which refinances the property for $45,150, 70 percent of its fair market value of $64,500; a lease between Beasley as tenant and Paul as landlord dated September 25, 1992; and a quitclaim deed dated January 24, 1995, releasing the September 3, 1990, deed to secure debt.

required by OCGA § 10-1-393 (b) (20) (C) (i).[5] However, this argument only addresses the August 27, 1990, purchase agreement, not the August 28, 1990, purchase agreement. By all accounts, it was the latter agreement that governed the sale of her house. Because Beasley does not argue or cite authority for the proposition that the August 28, 1990, purchase agreement violates OCGA § 10-1-393, this issue is deemed abandoned on appeal. See *New York Ins. Co. v. Willett*, 183 Ga. App. 767, 771 (4) (360 SE2d 37) (1987); Court of Appeals Rule 27 (c) (2).

Finally, Beasley argues that if the promissory note lacks consideration, the parties' agreement "has a badge of fraud." However, Beasley expressly elected to sue on the promissory note itself, not on the theory of fraud. This election was clearly communicated to the trial court. Accordingly, Beasley is precluded from arguing her fraud theory on appeal. "[W]e are limited on appeal to those grounds presented to and ruled upon by the trial court." (Punctuation omitted.) *Dietz v. Becker*, 209 Ga. App. 678, 679 (434 SE2d 103) (1993). "Only those grounds urged below will be considered on appeal." (Punctuation omitted.) Id. at 679-680.

With respect to Beasley's arguments for cancellation of the quitclaim deed, the quitclaim deed was executed to release the security deed underlying the promissory note. However, because we determined that the promissory note was unenforceable due to a lack of consideration, the corresponding security deed was also unenforceable. Beasley's attempts to cancel the quitclaim deed are therefore rendered moot, and we now hold that the promissory note, security deed, and quitclaim deed are void as a matter of law.

*Judgment affirmed. Beasley, C. J., and Birdsong, P. J., concur.*

DECIDED DECEMBER 2, 1996.

*Michael P. Froman*, for appellants.
*Donald J. Sharp*, for appellee.

---

[5] OCGA § 10-1-393 (b) (20) (C) (i) declares: "By way of illustration only and without limiting the scope of subsection (a) of this Code section, the following practices are declared unlawful: . . . (C) [f]ailing to comply with the following provisions in connection with the purchase of property used as a dwelling place by a debtor whose loan for said property is in default and who remains in possession of this property after said purchase: (i) [a] written contract shall be employed by the buyer which shall summarize and incorporate the entire agreement between the parties, a fully completed copy of which shall be furnished to the debtor at the time of its execution. Said contract shall show the date of the transaction and the name and address of the parties; shall state, in plain and bold language, that the subject transaction is a sale; and shall indicate the amount of cash proceeds and the amount of any other financial benefits that the debtor will receive."