### A03A0243. HORNSBY et al. v. HUNTER.
(585 SE2d 900)

PHIPPS, Judge.

Attorney Robert W. Hunter III brought an action to foreclose an attorney's statutory lien on real property owned by Walter S. Hornsby III and his sister, Willena Hornsby Butler (collectively the Hornsbys). Because the Hornsbys had extended an option to Southeastern Family Homes, Inc. to develop the land, Hunter named the Hornsbys and Southeastern as defendants. At the close of evidence at the jury trial, the Hornsbys and Southeastern moved for directed verdicts on several grounds. The trial court denied their motions and submitted the case to the jury, which returned a verdict in Hunter's favor, awarding him "44.65 acres of land." The court adopted the verdict and further awarded post-judgment interest. The Hornsbys and Southeastern appealed to the Supreme Court of Georgia, which transferred the case to this court. Appellants contend that they were entitled to directed verdicts and that the award of post-judgment interest was unauthorized. Because the record demonstrates that the appellants were entitled to directed verdicts, we reverse. The issue of post-judgment interest is moot.

A directed verdict is authorized only when there is no conflict in the evidence as to any material issue, and the evidence introduced, construed most favorably to the party opposing the motion, demands a particular verdict.[1] The appellate standard used to review the grant or denial of a directed verdict is the any evidence test.[2]

The Hornsbys were co-owners of over 700 acres of property that had been owned by their maternal grandfather, Paul Dixon, who had died in 1941. The property, which was located near the Savannah River in Columbia County, had been in their family since 1870. Certain of the Hornsbys' relatives were living on and farming the land, and Walter Hornsby testified that he had retained Hunter to "clear the title of [that] heir property."

In September 1986, Hornsby, his sister, and their mother[3] hired

---

[1] OCGA § 9-11-50 (a); *Beasley v. Paul*, 223 Ga. App. 706, 707 (2) (478 SE2d 899) (1996).

[2] *City of Columbus v. Barngrover*, 250 Ga. App. 589, 594 (2) (552 SE2d 536) (2001).

[3] Their mother, Pauline Dixon Hornsby, died in 1996 or 1997. Walter Hornsby received his mother's interest by deed. Willena Hornsby Butler received her interest from an uncle by deed. The grantors conveyed real estate interests "that will become [theirs] from the settling of" the estate of Paul Dixon.

Hunter as their attorney. Their engagement contract, supplied by Hunter, provided,

> We, PAULINE D. HORNSBY, WALTER S. HORNSBY, III, and WILLENA HORNSBY BUTLER, employ Robert W. Hunter, III, as our attorney to represent us and our heirs in all of our claims arising out of our inheritance of the Estate of Mr. Paul H. Dixon, Jr., consisting mainly of real estate located in said County.
>
> We agree to pay said attorney Twenty (20%) percent of the gross proceeds in this case, whether the result of suit or negotiation, regardless of whether any such proceeds paid are paid under any preexisting rights we may have, either statutory or at common law. This agreement covers any causes of action we have in order to fully vest title to any property in our names, including any petitions for partitioning and quieting title.
>
> We also agree to reimburse him all out-of-pocket expenses, costs, advances, etc., incurred by him in pursuing these claims, which will be deducted prior to determining the gross proceeds.
>
> We do hereby constitute and appoint Robert W. Hunter, III, as our true and lawful attorney in fact, for us and in our name, place and stead, to sign our names to any pleading, notice, release, check, draft or other paper necessary or advisable in the pursuit of any of these claims. We hereby grant him complete power and authority in these claims, or all of them, and all matters attendant thereto, to do generally all things necessary, or advisable, or desirable in their pursuit. The power and agency herein granted is coupled with an interest and is irrevocable by death or incompetence.
>
> We have read this agreement and agree that it binds our heirs, assigns, executors, administrators and any other successor in interest.

Hunter testified that, under this agreement, his fee was contingent upon "get[ting] marketable title to Willena and Walter." He stated that he had negotiated with the attorney representing "the other side" and that an agreement was reached as to the division of the property. In December 1988, the probate court accepted the proposed division. The Hornsbys received deeds for four tracts of land totaling 371 acres. Hunter thereafter asked the Hornsbys for his fee. The Hornsbys disputed Hunter's claim that the agreement entitled

him to 20 percent of their land. In 1989, having not received a fee, Hunter recorded a lien for attorney fees against the property under OCGA § 15-19-14.

In 1991, a lawsuit was filed, challenging the deed by which Willena Butler had claimed an interest to the original undivided estate. Walter Hornsby testified that after he and his sister were served, he gave the papers to Hunter because he had not "received any kind of title to my property" and because "[Hunter] was still on the case." Hunter defended the Hornsbys' title, and that case was resolved in their favor in 1995.

In 1992, a second lawsuit challenged the Hornsbys' property interest. Walter Hornsby testified that he took that case to Hunter also because he expected Hunter to defend his family's interest because "he [had] agreed to give us a clear title." During the pendency of that case, the Hornsbys entered into a joint venture agreement with Southeastern that gave the company an option to develop the property. The Hornsbys hired Southeastern's attorney for the limited purposes of resolving the issue of Hunter's fee. That attorney wrote Hunter a letter, dated September 29, 1994, stating that the Hornsbys believed that Hunter "[was] claiming too much in the way of a fee." The letter further stated that the Hornsbys considered the contract's language ambiguous. The letter stated, "If you wish to withdraw from representing them, I believe you are entitled to be paid the reasonable value of your services to date. If you elect to continue to represent them, I believe you are entitled to be paid a reasonable fee." Hunter continued working on the Hornsbys' behalf, later testifying, "my clients did not ask me to withdraw." He successfully defended the Hornsbys' interest in that case, which was resolved in April 1996.

In February 1999, a third lawsuit challenged the Hornsbys' title. Hunter testified that Walter Hornsby told him that he had an obligation under the contract to represent them in that matter. In a letter dated March 19, 1999, Hunter informed the Hornsbys that he had prepared responsive pleadings and that, "I have undertaken this representation of you under the assumption that it reaffirms our contract for representation with regard to this same property." Hunter represented the Hornsbys in that action, and in December 1999, that case concluded with summary judgment entered in favor of the Hornsbys.

In September 2000, Hunter sought to foreclose on his attorney's lien, seeking 20 percent of the Hornsbys' property, or in the alternative, sale of their land and receipt of 20 percent of the proceeds. At trial, Hunter clarified, "I want the land." The jury returned a verdict in favor of Hunter for 44.65 acres. The court adopted the verdict and then awarded post-judgment interest thereon. After a hearing, the

court determined that the value of the property was $15,000 per acre. Citing OCGA § 9-12-10, the court determined, "[g]iven the award to [Hunter] of 44.65 acres undivided interest in said property, the value of [Hunter's] judgment for the purposes of calculating post judgment interest is $669,750." Finally, the court stated, "If [Hunter] wishes to have his interest in the real property in question separated out, he should proceed by initiating a statutory partitioning."

1. Appellants contend that the court erred in denying their motions for a directed verdict, arguing that the Hornsbys' new counsel's letter of September 29, 1994, terminated the contingency fee contract before the contingency vested. We disagree.

While it is true that "a client has the absolute right to discharge the attorney and terminate the relation at any time,"[4] the cited letter did not purport to do that. No evidence shows that the Hornsbys ever told Hunter that they were discharging him. Hunter continued to represent the Hornsbys through 1999. And regarding whether Hunter was obligated to defend their title in those subsequent challenges, Walter Hornsby testified, "[Hunter] would not have fulfilled that contract if he would not have." Because there was evidence that the September 29, 1994 letter did not terminate the representation, the trial court correctly denied the motions for directed verdict on this ground.

2. Appellants contend that the court erred in denying their motions for directed verdict, arguing that Hunter's claim was barred by the statute of limitation. Foreclosure on a lien to secure a debt is time-barred when a claim on the underlying debt has become time-barred.[5] Therefore, the dispositive issue is whether the statute of limitation barred an action on the underlying debt at the time Hunter sought to foreclose his attorney's lien.

The statute of limitation begins to run when the right of action accrues.[6] Appellants argue that Hunter's right of action accrued in December 1988, when the probate court's partitioning order was entered. They claim that since Hunter did not seek to foreclose on the lien until almost 12 years later, his action to foreclose the lien was time-barred.

Hunter counters that his right of action did not accrue in December 1988 because he had an ongoing obligation to defend title for the Hornsbys, as he did in three subsequent lawsuits. He claims that the statute of limitation could not have started running until the latest

---

[4] (Citation and punctuation omitted.) *AFLAC, Inc. v. Williams*, 264 Ga. 351, 353 (1) (444 SE2d 314) (1994).

[5] *Jones v. Wellon*, 237 Ga. App. 62, 66-67 (514 SE2d 880) (1999).

[6] *Kicklighter v. Woodward*, 267 Ga. 157, 158 (1) (476 SE2d 248) (1996); OCGA § 9-3-25.

lawsuit was concluded in 1999. Because he filed the instant action the next year, he argues, it was not time-barred.

The engagement contract shows that the Hornsbys agreed that Hunter would represent them "in all of our claims arising out of our inheritance of the Estate of Mr. Paul H. Dixon, Jr., consisting mainly of real estate. . . ." The contract further shows that the Hornsbys agreed that, "This agreement covers any causes of action we have in order to fully vest title to any property in our names, including any petitions for partitioning and quieting title." While the contract's language may have obligated Hunter to represent the Hornsbys only to obtain title, the parties' actions demonstrated, as confirmed by their trial testimony, that they understood that Hunter was contractually obligated to defend the Hornsbys' title through 1999.

"An open account for continuous service of an attorney, for which he is entitled to be paid only after a particular result is procured and accepted by his employer, is not barred until four years after such result is accepted."[7] Here, Hunter continued to work on the Hornsbys' behalf through 1999. Because there was evidence that Hunter's right of action did not accrue until 1999, which was within four years of the date Hunter filed this action, the trial court did not err in denying the motions for directed verdict on the statute of limitation defense.[8]

3. Appellants contend that the trial court erred in denying their motions for directed verdict on the ground that the engagement contract was unenforceable with regard to land inherited by the Hornsbys. They complain that the contract sought to collect a contingent fee where there was no contingency. The Hornsbys claim that before they employed Hunter, they already owned an undivided interest in the original estate and that the probate court decree merely granted them specific acreage. Further, they claim, the term "gross proceeds" was too vague to be understood as encompassing the actual land inherited.

In *Brown v. Welch*,[9] an attorney claimed part of his client's inheritance under a fee contract providing that the attorney would be compensated with a percentage of "all assets and money recovered" from the estate of the client's father. The Supreme Court of Georgia reasoned that the client had not "recovered" any estate assets that had devolved to the other heirs, but had received only what he was due via intestacy. Thus, the Court ruled, the attorney was entitled to

---

[7] *City of Summerville v. Sellers*, 94 Ga. App. 152, 163 (13) (94 SE2d 69) (1956).

[8] See *Kueffer Crane &c. Svc. v. Passarella*, 247 Ga. App. 327, 329-330 (2) (543 SE2d 113) (2000).

[9] 253 Ga. 118 (317 SE2d 520) (1984).

nothing. In *Brown*, the Court instructed that the following "strict construction" be applied to contingent fee contracts:

> [I]n order for a contingent fee contract to entitle an attorney to any participation in a right or entitlement which is already vested in the client (as is here the case) or which is immediately and unequivocally available to the client (as in an offer of settlement), such an intention on the part of both attorney and client must appear through plain and unambiguous terms. Otherwise, an ambiguously worded agreement must be construed against the party which prepared it.[10]

Appellants argue that the engagement agreement did not plainly and unambiguously show an intent that Hunter would be entitled to a percentage of the Hornsbys' land.

The engagement contract required the Hornsbys to "pay" Hunter 20 percent of the "gross proceeds in this case," including "such proceeds paid . . . under any preexisting rights . . . either statutory or at common law." But the contract did not expressly obligate the Hornsbys to convey to Hunter 20 percent of the inherited real property. Hunter testified that he understood "gross proceeds" to mean "recovery," "whether it be timber, whether it be crops, whether it be money, whether it be land." But the contract did not define that term. Black's Law Dictionary defines proceeds, not as land inherited, but as

> [i]ssues; income; yield; receipts; produce; money or articles or other thing of value arising or obtained by the sale of property; the sum, amount, or value of property sold or converted into money or into other property. Proceeds does not necessarily mean only cash or money. [Cit.] That which results, proceeds, or accrues from some possession or transaction. . . .[11]

In this case, an interpretation of "gross proceeds" as contemplating the payment of money and not inherited real property is indicated by the fact that elsewhere in the contract the Hornsbys agreed to reimburse Hunter for various expenses that he incurred by deducting such expenses, costs, and advances "prior to determining the gross proceeds." Furthermore, Hunter testified that he was paid a

---

[10] Id. at 119.
[11] Black's Law Dictionary (6th ed. 1990), p. 1204.

20 percent share of funds obtained by the Hornsbys from a sale of timber from the land.

In accordance with *Brown*,[12] having applied a strict construction to the contract in this case, we are unable to find "plain and unambiguous terms" in it that show that the Hornsbys intended for Hunter to be compensated by a percentage of their inherited land. Accordingly, the court erred in denying appellants' motions for directed verdict.[13]

4. Although the Hornsbys contend that the trial court erred in awarding interest on the judgment, that contention is now moot.

*Judgment reversed. Ellington, J., concurs. Blackburn, P. J., concurs in judgment only.*

DECIDED JULY 16, 2003 —
RECONSIDERATION DENIED JULY 31, 2003 — ▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

*Warlick, Tritt & Stebbins, Charles C. Stebbins III, Hull, Towill, Norman, Barrett & Salley, David E. Hudson*, for appellants.

*Tucker, Everitt, Long, Brewton & Lanier, John B. Long*, for appellee.