## A97A0532. NICHOLL v. NATIONSBANK OF GEORGIA, N.A.

(488 SE2d 751)

JOHNSON, Judge.

Grant Nicholl sued NationsBank for negligence and defamation arising out of a "true name fraud" perpetrated by a third party. The trial court granted NationsBank's motion for summary judgment on both causes of action, but did not explain its rationale. Nicholl appeals, and we affirm.

A motion for summary judgment should be granted when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). To obtain summary judgment, a defendant need not produce any evidence, but must only point to an absence of evidence to support at least one essential element of the plaintiff's claim. *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991). We review a grant of summary judgment de novo, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant. *Rice v. Huff*, 221 Ga. App. 592, 593 (472 SE2d 140) (1996).

Viewed in this light, the evidence shows Nicholl's wallet, which contained his driver's license, social security card, and other items of identification, was lost or stolen in August or September 1993. At least one of the identification documents in the wallet bore Nicholl's signature.

One year later, on September 2, 1994, Nicholl was stopped by a police officer for speeding. The officer ran a computer check during the traffic stop, which revealed there was an outstanding warrant for Nicholl's arrest on a charge of writing a bad check. See OCGA § 16-9-20. The officer arrested Nicholl and took him to the police station, where Nicholl was shown a December 1993 check drawn on a NationsBank account he purportedly owned, bearing the signature "Grant Nicholl," and returned by NationsBank for insufficient funds.

Nicholl never had a checking account with NationsBank. Nicholl never lived at the address printed on the check nor had the home or work telephone number written on it. The signature on the check was not Nicholl's. However, the social security number and date of birth on the check were Nicholl's.

After his release on bond, Nicholl went to a NationsBank office and explained that an impostor must have opened an account in his name. A person in the office examined Nicholl's driver's license and entered something on a computer, then gave him a telephone number to call. Nicholl called the number and spoke to someone who promised to send him information about the account. The information did not arrive, but Nicholl took no further action at that point. The dates of these first two contacts with NationsBank are not in the record. Apparently, they occurred sometime in September 1994.

In February 1995, after the state crime laboratory verified that Nicholl's signature did not match the signature on the check, the prosecutor entered a nolle prosequi on the criminal charge. There is no indication in the record Nicholl took any action to inform Nations-Bank of the results of the crime lab's handwriting analysis.

Two years after his wallet was lost, in August or September 1995, Nicholl attempted to open a checking account with Bank South. Bank South refused to open the account, explaining that the ChexSystems service listed an unfavorable report on Nicholl. Nicholl contacted ChexSystems, which mailed him a December 1995 document showing a report from NationsBank indicating "unsatisfactory handling" of a checking account.

Nicholl contacted NationsBank and again explained the situation. NationsBank responded by sending him documents showing an account had been opened in his name in October 1993 and at least seven checks written on the account had been returned for insufficient funds.

In March 1996, ChexSystems sent Nicholl's lawyer a letter stating that ChexSystems had contacted NationsBank, which had confirmed that the "unsatisfactory handling" report on Nicholl was accurate. The letter said ChexSystems intended to maintain the information in their files for five years. In May 1996, Nicholl twice attempted to open a checking account with First Union Bank. On both occasions, First Union refused to open the account based on the ChexSystems report, listing the report it had received from Nations-Bank.

1. Nicholl contends the trial court erred in granting summary judgment to NationsBank on the negligence count because no document in his missing wallet bore the address or telephone numbers on the NationsBank checks, and the signature on the checks differed from his real signature, which was on at least one of his stolen documents. Nicholl argues that from these facts, a jury would be authorized to infer NationsBank opened an account for someone who did not have an identification document bearing both a name and a current address or telephone number, and whose signature did not match the signature on the identification documents presented.

Nicholl's argument fails because it depends on speculation, unsupported by any evidence, that the impostor presented only the stolen documents to NationsBank. The evidence of record shows nothing about what identification, stolen or forged, the impostor actually presented. Moreover, the telephone numbers were handwritten on the checks and therefore prove nothing about any telephone numbers the impostor may have furnished to NationsBank when he opened the account. Nor has Nicholl presented any other evidence from which a trier of fact could conclude NationsBank was

negligent in opening the account in his name. "An inference cannot be based upon evidence which is too uncertain or speculative or which raises merely a conjecture or possibility." (Citation and punctuation omitted.) *Edwards v. Campbell Taggart Baking Cos.*, 219 Ga. App. 806, 807 (1) (466 SE2d 911) (1996).

The record is devoid of any indication Nicholl attempted, through discovery, to obtain more specific information about NationsBank's conduct in opening the account. There are no interrogatories or requests for production of documents which would establish what identification NationsBank examined or what its identification policies were at the time.[1] There is no deposition testimony of bank employees who could provide such information. There is no expert testimony on what would be a reasonable identification policy for a bank to have. Compare *Patrick v. Union State Bank*, 681 S2d 1364, 1365, 1367 (Ala. 1996), in which the plaintiff presented testimony from a bank security expert regarding identification requirements that were reasonable and common in the banking industry, and the evidence established the account in the plaintiff's name was opened with identification that did not meet such requirements. Compare also *River Parish Svcs. v. Good Hope Refineries*, 457 S2d 1290 (La. App. 1984), and *Hartford Acc. &c. Co. v. All American Nut Co.*, 34 Cal. Rptr. 23 (1963). The evidence in this record neither establishes such a deficiency nor supports an inference of such a deficiency. The trial court therefore did not err in granting summary judgment to NationsBank on the negligence claim. See generally *Lau's Corp.*, supra.

2. As to the defamation claim, Nicholl contends a jury would be authorized to find that because he three times orally asserted to NationsBank he had not opened the account, NationsBank should have investigated before confirming to ChexSystems that it was Nicholl who handled the account in an unsatisfactory manner. This claim is subject to the federal Fair Credit Reporting Act, 15 USC § 1681 et seq., which preempts state defamation laws "to the extent that those laws are inconsistent with any provision of [the Fair Credit Reporting Act], and . . . only to the extent of the inconsistency." 15 USC § 1681t; see *Bloom v. I.C. System*, 972 F2d 1067, 1069 (II) (9th Cir. 1992).

How a consumer handles a checking account is "information . . . bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living," and is therefore a "consumer report" under 15 USC

---

[1] The affidavit presented by NationsBank explains the identification policy in force three years after the account was opened.

§ 1681a (d). ChexSystems is a "consumer reporting agency" under 15 USC § 1681a (f) because it "regularly engages . . . in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties." See id. The Act provides that no consumer may bring an action in the nature of defamation against one who furnishes information to a consumer reporting agency, "except as to false information furnished with malice or willful intent to injure such consumer." 15 USC § 1681h (e); see generally *Thomas v. Equifax*, 142 Ga. App. 422 (236 SE2d 154) (1977). As explained below, the Act mandates summary judgment for NationsBank because the evidence is insufficient to establish it furnished information to ChexSystems with malice or wilful intent to injure.

There is no indication in the record before us that Nicholl offered NationsBank any reasonable evidence he was not the person who opened the checking account. Such evidence could have included a signature for comparison with the one NationsBank had on file, or a copy of the dismissal of the criminal warrant, or evidence of his address or telephone number at the time the account was opened. Nicholl only made oral assertions to NationsBank, and the credibility of those assertions was undercut by his delay of over a year in following up on his first inquiry in September 1994. The driver's license Nicholl displayed showed only that he was the person making the inquiry and proved nothing about whether he was the person who had originally opened the account. The fact that Nicholl's bare oral assertions did not induce NationsBank to refrain from confirming its original assertion to ChexSystems does not show that the confirmation was made with malice or wilful intent to injure. See generally *Bloom*, supra at 1069-1070 (II), and *Hoglan v. First-Security Bank of Idaho*, 819 P2d 100, 102-103 (4) (Id. 1990). Amendments to the Fair Credit Reporting Act that might impose a greater duty on NationsBank in situations such as Nicholl's are not effective until September 30, 1997. See 15 USC § 1681s-2. The trial court therefore did not err in granting NationsBank summary judgment on the defamation claim. A grant of summary judgment must be affirmed if it is right for any reason. *Orion &c., L.P. v. Westinghouse &c. Corp.*, 223 Ga. App. 539, 543 (2) (b) (478 SE2d 382) (1996).

Because we find the issue discussed above determinative, we need not reach the question of whether Nicholl presented sufficient evidence of special damages, which must be proven when the allegedly defamatory communication is not defamatory per se and does not relate to the plaintiff's trade or business. See *Jamison v. First Ga. Bank*, 193 Ga. App. 219, 222-223 (3) (387 SE2d 375) (1989).

*Judgment affirmed. Pope, P. J., concurs. Blackburn, J., concurs in judgment only.*

DECIDED JULY 11, 1997.

*Simmons & Simmons, Annie R. Simmons*, for appellant.
*Sullivan, Hall, Booth & Smith, Robert L. Shannon, Jr.*, for appellee.