A98A2197. GIBSON et al. v. DECATUR FEDERAL SAVINGS & LOAN ASSOCIATION.
(508 SE2d 788)

ELDRIDGE, Judge.

On May 12, 1989, appellants John W. Gibson and Paula T. Gibson ("the Gibsons") refinanced their home located at 2650 Whiteleigh Court in DeKalb County. The Gibsons took out a loan of $129,000 from Decatur Federal Savings & Loan Association and executed a note and security deed in its favor. First Union Mortgage Corporation ("First Union") is successor to the interest of Decatur Federal by merger.

An independent contractor working for First Union erroneously marked the note "paid in full" and by written correspondence dated September 4, 1994, returned the original note to the Gibsons. It was undisputed by the parties that the Gibsons had not paid the outstanding balance on the loan.[1] Upon receiving the erroneously satisfied note, the Gibsons ceased making payments on the debt. First Union received its last payment on the loan on August 17, 1994, leav-

---

[1] *Decatur Fed. Sav. & Loan v. Gibson*, 268 Ga. 362 (489 SE2d 820) (1997).

ing a remaining principal balance of $124,397.76 due.

First Union attempted to negotiate with the Gibsons. However, the negotiations were unsuccessful and, on April 10, 1996, First Union filed an action for declaratory judgment and equitable relief seeking to reform the note so that no issues would exist that the Gibsons had a continuing obligation to repay the loan. On May 15, 1996, the Gibsons filed an answer and counterclaim. In their counterclaim, the Gibsons sought: (1) to quiet title to the property; (2) statutory penalties for First Union's allegedly wrongful failure to release the Security Deed; (3) damages for libel arising out of First Union's credit reporting on the loan; (4) punitive damages for "libeling the defendants and their title"; and (5) OCGA § 9-15-14 attorney fees.

On July 19, 1996, First Union filed a motion for summary judgment requesting that the court declare that the Gibsons remained obligated to repay the loan plus interest. This motion was not heard by the assigned judge, but was heard by a magistrate judge sitting by special designation as a superior court judge. An order was entered on October 2, 1996, denying First Union's motion for summary judgment. The trial court granted a certificate of immediate review and, on November 22, 1996, the Supreme Court granted First Union's application for interlocutory appeal.

On October 23, 1996, First Union filed a motion to tender, requesting that the trial court require the Gibsons to pay their overdue loan payments into the registry of the superior court. After oral argument on December 18, 1996, the trial judge orally granted First Union's motion to tender. On December 19, 1996, the Gibsons filed a cross-appeal in the Supreme Court, alleging the superior court lacked jurisdiction to grant First Union's motion to tender. On January 10, 1997, the trial court issued a written order on First Union's motion to tender and required the Gibsons to pay their loan payments, starting with the January 1, 1997 loan payment, into the registry of the superior court.

Between January 10, 1997, and July 18, 1997, the Gibsons paid only two of the court-ordered loan payments into the registry of the superior court. On July 18, 1997, First Union filed a motion for sanctions based on the Gibsons' failure to make the required payments. On September 17, 1997, the parties entered into a consent order. The Gibsons paid the remaining payments into the registry of the superior court, and First Union's request for attorney fees was reserved until final ruling on this case.

On September 15, 1997, the Supreme Court issued its opinion, reversing the trial judge and finding that, as a matter of law, First Union was entitled to reformation of the note and that the Gibsons were not entitled to satisfaction of the security deed. The Supreme Court also held that the superior court retained jurisdiction to enter

its ruling on the motion to tender. *Decatur Fed. Sav. & Loan v. Gibson*, supra.

Thereafter, on December 4, 1997, First Union moved for an award of attorney fees under the terms of the deed to secure debt and pursuant to OCGA § 9-15-14. On December 15, 1997, the Gibsons filed a motion for a temporary restraining order to enjoin First Union from foreclosing on their home and filed an amendment to their counterclaim seeking a set-off of any amount they might recover on the counterclaim against the amount they owed First Union.

On January 2, 1998, First Union filed a motion requesting summary judgment on the Gibsons' counterclaim. On January 5, 1998, the Gibsons further amended their counterclaim and requested that the trial court enter a declaratory judgment finding that First Union was not entitled to interest on the note and deed to secure debt prior to September 15, 1997, the date of the Supreme Court's opinion. On January 5, 1998, the trial court entered an order restraining the foreclosure conditioned on the Gibsons paying the principal portion of all their past due mortgage payments into the registry of the superior court.

The trial court held a hearing on April 15, 1998, on First Union's motion for attorney fees. On April 20, 1998, the Gibsons filed a motion to recuse the trial judge, alleging that the trial judge's conduct during the April 15, 1998 hearing showed a bias against them. The motion to recuse was denied by the trial judge on May 5, 1998. Thereafter, on May 13, 1998, the trial court granted First Union's motion for summary judgment as to the Gibsons' counterclaim. On the same day, the trial court entered an order granting First Union's motion for attorney fees under both OCGA § 9-15-14 (b) and under the terms of paragraph 7 of the deed to secure debt, and set June 29, 1998, as the date to hear evidence as to the amount of attorney fees to which First Union would be entitled. It is from entry of the two May 13, 1998 orders and the order denying their motion to recuse that the Gibsons appeal.

1. The Gibsons allege that the trial court erred in entering the order of May 13, 1998, granting First Union attorney fees under OCGA § 9-15-14 (b) and under the terms of paragraph seven of the deed to secure debt.

(a) Paragraph seven of the deed to secure debt states: "7. Protection of Lender's Rights in the Property; Mortgage Insurance. If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or to enforce laws or regulations), the Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property.

Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorney's fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so. Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bare interest from the date of disbursement at the Note rate and shall be payable with interest, upon notice from Lender to Borrower requesting payment. . . ."

"The construction of contracts involves three steps. At least initially, construction is a matter of law for the court. First, the trial court must decide whether the language is clear and unambiguous. If it is, the court simply enforces the contract according to its clear terms; the contract alone is looked to for its meaning. Next, if the contract is ambiguous in some respect, the court must apply the rules of contract construction to resolve the ambiguity. Finally, if the ambiguity remains after applying the rules of construction, the issue of what the ambiguous language means and what the parties intended must be resolved by a jury. [Cit.]" *CareAmerica v. Southern Care Corp.*, 229 Ga. App. 878, 880 (494 SE2d 720) (1997).

The language of paragraph seven of the deed to secure debt is clear and unambiguous. The wording of paragraph seven makes it clear that the lender is only entitled to a reimbursement of expenditures that it may make to protect itself from actions over which the lender has no control, i.e., if the borrower, through no fault of the lender, fails to perform the covenants and agreements contained in the deed to secure debt or if a proceeding is initiated by the borrower or by a third party against the borrower that affects the lender's rights in the property. In this case, First Union seeks attorney fees for a proceeding that it brought to correct an error that was made by its own internal operations. Such a proceeding is clearly not covered under the four corners of the deed to secure debt. Therefore, the trial court erred in awarding First Union attorney fees under paragraph seven of the deed to secure debt.

(b) However, there was no error in the trial court's finding that First Union was entitled to recover attorney fees under OCGA § 9-15-14 (b). "Pursuant to OCGA § 9-15-14 (b), a trial court may assess attorney fees if it finds (1) that an attorney or party brought or defended an action that lacked substantial justification *or* (2) that the action was interposed for delay or harassment *or* (3) that an attorney or party unnecessarily expanded the proceedings by other improper conduct. An award under OCGA § 9-15-14 (b) is discretionary and the standard of review is abuse of discretion." (Citation and

punctuation omitted; emphasis in original.) *McKeen v. McKeen*, 224 Ga. App. 410 (1) (481 SE2d 236) (1997).

Based on the evidence previously set forth in this opinion that the Gibsons never disputed that the debt had not been paid in full by them, the trial court did not abuse its discretion by finding that the Gibsons' defense lacked substantial justification and that their conduct during the course of the litigation was egregious, vexatious and harassing, and unnecessarily prolonged the litigation. Accordingly, there was no abuse of the trial court's discretion in determining that First Union was entitled to an award of attorney fees under OCGA § 9-15-14 (b). See *Mitcham v. Blalock*, 268 Ga. 644, 647 (5) (491 SE2d 782) (1997).

2. The Gibsons allege that the trial court erred in granting summary judgment to First Union on the Gibsons' counterclaim. We disagree.

The Gibsons argue that, at the time of the trial court's ruling, they had pending counterclaims for: (1) libel for First Union's reporting to various credit agencies that their loan was delinquent; (2) punitive damages for libel; (3) declaratory judgment on whether the accrual of interest on the indebtedness prior to the Supreme Court's opinion had been waived or was estopped by the conduct of First Union; and (4) a set-off of such counterclaim against First Union's monetary claim.

(a) The Federal Fair Credit Reporting Act, 15 USC § 1681 et seq., "preempts state defamation laws 'to the extent that those laws are inconsistent with any provision of the Fair Credit Reporting Act[.]' 15 USC § 1681t; see *Bloom v. I.C. System*, 972 F2d 1067, 1069 (II) (9th Cir. 1992)." (Punctuation omitted.) *Nicholl v. NationsBank of Ga.*, 227 Ga. App. 287, 289 (488 SE2d 751) (1997). Under the Federal Fair Credit Reporting Act, anyone who furnishes information to a consumer reporting agency is immune from state law defamation actions *"except as to false information furnished with malice or willful intent to injure such consumer."* (Emphasis supplied.) 15 USC § 1681h (e).

The Gibsons claim that First Union should have reported their account as "disputed" as opposed to "delinquent." However, the facts are undisputed that on January 1, 1995, when First Union reported that the Gibsons' account was past due, the Gibsons had not made any payments on their loan since August 1994. The Gibsons were aware as early as December 27, 1994, that "under no circumstances [was] First Union willing to walk away from the debt." Further, after receiving such notice, the Gibsons never made any attempts to pay the "disputed" payments under protest. In fact, the Gibsons vigorously opposed First Union's motion to tender their loan payments into the registry of the superior court and, when the superior court ordered such payments to be made, made only two loan payments,

forcing First Union to file a motion for sanctions.

The evidence is uncontroverted that First Union's statement that the Gibsons were delinquent in their loan payments was true. The Gibsons have failed to carry their burden of showing that First Union made false statements to any consumer reporting agencies. Since the statement was true at the time it was made, First Union is subject to the qualified immunity created by 15 USC § 1681h (e).

Furthermore, even if First Union should have reported the loan as "disputed" as opposed to "delinquent," defendants have failed to come forward with any evidence to show that First Union acted with malice or wilful intent to injure them. "Mere proof of inaccuracy in a credit report will not suffice. [The Fair Credit Reporting Act] does not impose strict liability, only liability for malicious or willful non-compliance[.] [Cit.]" *Tinsley v. TRW, Inc.*, 879 FSupp. 550, 552 (IV) (D. Md. 1995). Janet West Tedder, who is a legal support specialist for First Union, averred that when the Gibsons defaulted on their loan, First Union, as part of its regular course of business, reported the Gibsons' default to three major credit bureaus to whom it regularly makes reports. The Gibsons put forth no evidence to contravene Ms. Tedder's averment and show that the conduct of First Union was malicious or done with the wilful intent to injure them.

There was no error in the trial court granting summary judgment in favor of First Union on the Gibsons' counterclaim for libel. Accordingly, the Gibsons' claim that the trial court erred in granting summary judgment to First Union on their counterclaim for punitive damages is without merit.

(b) The Supreme Court found in *Decatur Fed. Sav. & Loan v. Gibson*, supra, that the Gibsons' note had been cancelled by mistake and that the Gibsons had not satisfied the debt. The Supreme Court further found that First Union was "entitled to judgment as a matter of law as to its equitable action to reform the note." *Decatur Fed. Sav. & Loan v. Gibson*, supra at 364. By the plain language of the opinion, it is clear that the Supreme Court's intention was to place the parties in the same position they were in prior to First Union inadvertently marking the note satisfied, including the payment of *all* interest on the note.

Therefore, the Gibsons' counterclaim seeking a declaratory judgment that the accrual of interest on the note prior to the Supreme Court's opinion had been waived by First Union's conduct was decided adversely to the Gibsons by the Supreme Court's opinion and is res judicata. See OCGA § 9-12-40. Accordingly, there was no error in the trial court granting First Union's motion for summary judgment on this counterclaim. See *Mitcham v. Blalock*, supra at 645-646 (2).

(c) Further, since the Gibsons were not entitled to any relief on

their counterclaim, there was no error in the trial court granting summary judgment to First Union on the Gibsons' counterclaim for a set-off against First Union's monetary claim.

3. Lastly, the Gibsons allege that the trial judge erred in failing to refer to another judge the Gibsons' motion to recuse or disqualify the trial judge.

Under Uniform Superior Court Rule ("USCR") 25.3 "[w]hen a judge is presented with a motion to recuse, or disqualify, accompanied by an affidavit, the judge shall temporarily cease to act upon the merits of the matter and shall immediately determine the timeliness of the motion and the legal sufficiency of the affidavit, and make a determination, assuming any of the facts alleged in the affidavit to be true, whether recusal would be warranted. *If it is found that the motion is timely, the affidavit sufficient and that recusal would be authorized if some or all of the facts set forth in the affidavit are true,* another judge shall be assigned to hear the motion to recuse." (Emphasis supplied.)

The affidavit of John Gibson, which accompanied the Gibsons' motion to recuse, is legally insufficient and does not meet the standards for disqualification. "In order to be disqualifying the alleged bias must stem from an extra-judicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case. The alleged bias of the judge must be of such a nature and intensity to prevent the party from obtaining a trial uninfluenced by the court's prejudgment." (Citations and punctuation omitted.) *McBride v. State,* 213 Ga. App. 857, 859 (4) (446 SE2d 193) (1994); *Stevens v. Myers,* 190 Ga. App. 61 (378 SE2d 334) (1989); USCR 25.2.

The Gibsons argue that, during the hearing on attorney fees, the manner in which the trial court conducted oral argument, statements the trial judge made as to the facts of the case, and the trial court's ruling warrant recusal. However, John Gibson's affidavit fails to show that the trial court's conduct, statements, or ruling came from extra-judicial sources. From a review of the transcript of the hearing, it is clear that the statements and ruling are based on what the trial judge had learned from her participation in the case.

Further, the transcript of the hearing shows that the judge was fair and impartial to all parties. Therefore, the conduct alleged in the affidavit would not meet the requirement "that recusal would be authorized if some or all of the facts set forth in the affidavit are true." USCR 25.3.

If all three conditions precedent set forth in USCR 25.3 are not met, the trial judge shall deny the motion on its face as insufficient, and there is no need for the trial judge to assign the motion to another judge to hear. "It is as much the duty of a judge not to grant

the motion to recuse when the motion is legally insufficient as it is to recuse when the motion is meritorious." (Citation and punctuation omitted.) *Henderson v. McVay*, 269 Ga. 7, 9 (494 SE2d 653) (1998). Since the affidavit accompanying the motion for recusal and the grounds set forth therein were insufficient, the motion for recusal was properly denied by the trial judge without assigning it to another judge for a hearing.

*Judgment affirmed in part and reversed in part. McMurray, P. J., and Blackburn, J., concur.*

DECIDED NOVEMBER 6, 1998

*Gibson, Deal & Fletcher, James B. Deal, Caldwell & Watson, Harmon W. Caldwell, Jr.*, for appellants.

*McCalla, Raymer, Padrick, Cobb, Nichols & Clark, Carol V. Clark, Peter L. Lublin, Scott H. Michalove*, for appellee.