## A01A0868. BARNETT BANK OF SOUTHEAST GEORGIA
### v. HAZEL.
(555 SE2d 195)

ANDREWS, Presiding Judge.

Following a jury trial resulting in a judgment for Hazel of $75,000, Barnett Bank of Southeast Georgia appeals, contending that the trial court erred by denying its motions for directed verdict, judgment notwithstanding the verdict, and in limine and in its charge to the jury. Finding no error, we affirm.

1. The bank's second, third, and fifth enumerations, that the trial court erred in denying its motions for directed verdict made after the close of plaintiff's case and at the close of all the evidence and in denying its motion for j.n.o.v., are addressed together.

> The standards for granting a directed verdict or a judgment notwithstanding the verdict are the same. Where there is no conflict in the evidence as to any material issue, and the evidence introduced, with all reasonable deductions therefrom, shall demand a particular verdict, such verdict shall be directed. OCGA § 9-11-50 (Code Ann. § 81A-150). In reviewing grant [or denial] of a directed verdict or a judgment notwithstanding the verdict, we must decide whether all the evidence demanded it, or whether there was some evidence supporting the verdict of the jury. *Bryant v. Colvin*, 160 Ga. App. 442 (287 SE2d 238) (1981). A judgment notwithstanding the verdict is improperly granted in the face of conflicting evidence, and an appellate court must view the evidence in the light most favorable to the party who secured the verdict. Id. *Pendley v. Pendley*, 251 Ga. 30-31 (302 SE2d 554) (1983).

*Wesleyan College v. Weber*, 238 Ga. App. 90, 92 (517 SE2d 813) (1999).

So viewed, the evidence was that in October 1989, Hazel and her then husband Johnson obtained a home equity credit line of $28,000 from Barnett Bank. Hauss, the bank officer handling the matter, was in business with Johnson, who was also his brother-in-law. They owned two liquor stores, and the proceeds of the loan were used as operating capital for the stores. Although Johnson and Hauss knew that the businesses were in bad shape, they did not share this information with Hazel. Johnson also obtained a credit card from Barnett in connection with his Barnett Premiere Account one or two months after establishment of the home equity line of credit. Although the card was issued jointly to him and Hazel, Hazel did not sign an application for it, never had a card, and was unaware of this account until she began receiving collection calls on it in 1991 and 1992. Johnson,

who had charged the $5,000 limit on the card, filed for bankruptcy and was discharged in 1994. Thereafter, he executed a quitclaim deed of the residence to Hazel.

In November 1994, Hazel filed suit to enjoin foreclosure on the house by Barnett, as a result of the fraud of Johnson and Hauss. Hazel and Barnett agreed that Hazel would refinance the house, and Hazel's suit was dismissed in December 1994. Hazel testified that she had agreed to refinance the home but "would not be responsible for any credit card debts that went with this loan." The original home equity deed to secure debt was satisfied pursuant to the refinancing. Both the original home equity deed to secure debt and the refinancing deed to secure debt stated that each secured "any and all further indebtedness now owing or which may hereafter be owing, however incurred, to Grantee."

Don Jackson, on behalf of Barnett, then began calling Hazel at her job at Fort Stewart regarding the credit card indebtedness. Jackson was initially professional, but, after Hazel told him that the matter had been settled and to contact her attorney, his calls became more rude. Finally, Jackson threatened to garnish her wages, have her served with papers at work by the military police, and said he would come to court so he could laugh her out of court.

The credit card debt was then assigned to Barnett Recovery Corporation and turned over to attorney Robin, who filed suit in March 1996. The account document attached to Barnett Recovery's complaint listed the address of Hazel's former husband Johnson as that of the account holder. Hazel counterclaimed, and Barnett Recovery agreed to dismiss the action and to "remove or cause to be removed the adverse credit information regarding [Hazel] in this case reported by Barnett Bank or its affiliates or successors from [her] credit reports within thirty days from the date of entry of this dismissal." The mutual dismissal was signed by the attorneys on May 9, 1997, and entered by the court on August 7, 1997, "nunc pro tunc." A document itemizing the statements to be removed was attached to that dismissal. They were that the original line of credit loan which Hazel had refinanced and paid off had been discharged in bankruptcy; that a line of credit loan opened on January 3, 1990, had been discharged in bankruptcy; that a joint credit card account opened December 1, 1989, was her obligation and that it had been charged off; and that her refinanced real estate loan "was/is" 180 days past due.

During trial, Barnett's attorney Robin acknowledged that the several-month delay in the finalizing and entry of the mutual dismissal was attributable to his firm.

This suit was filed by Hazel on May 14, 1998, initially seeking specific performance of the mutual dismissal and punitive damages.

Prior to trial, however, the court and counsel all agreed that the matter was controlled by the Federal Fair Credit Reporting Act, 15 USCA § 1681 et seq. and that damages were available under OCGA § 51-12-6. In fact, three of the four requests to charge the jury filed by Barnett dealt with provisions of the Federal Fair Credit Reporting Act.

Pursuant to that Act, Hazel had to show that Barnett had provided false information to credit reporting agencies with malice or wilful intent to injure her. In addition to the evidence set out above, Hazel introduced evidence that, as late as December 7, 1998, the incorrect information was still contained in credit agency reports and that some of it remained as of the date of trial in May 1999.

A number of the arguments made here by Barnett were not made below and will not be considered here for the first time. *Beasley v. Paul*, 223 Ga. App. 706, 711 (2) (478 SE2d 899) (1996). Because the evidence did not demand a verdict for Barnett, the trial court's denial of the motions for directed verdict and j.n.o.v. was not erroneous. *St. Paul Mercury Ins. Co. v. Meeks*, 270 Ga. 136, 137 (1) (508 SE2d 646) (1998); *Time Warner Entertainment Co. v. Six Flags Over Ga.*, 245 Ga. App. 334, 341 (1) (537 SE2d 397) (2000). Compare *Vidrine v. American Professional Credit*, 223 Ga. App. 357, 358 (1) (477 SE2d 602) (1996), with *Gibson v. Decatur Fed. Sav. &c.*, 235 Ga. App. 160, 164 (2) (508 SE2d 788) (1998), and *Nicholl v. NationsBank of Ga.*, 227 Ga. App. 287, 290 (2) (488 SE2d 751) (1997).

2. Barnett contends, in its first enumeration of error, that the trial court improperly denied its motion in limine which sought to exclude from evidence all transactions between the parties prior to entry of the mutual dismissal.

Although Barnett's brief states that it "filed its Motion in limine," there is no written motion in limine contained in the record before us, nor is there any transcript of any pretrial discussion of an oral motion. The sole reference to it prior to trial is the trial court's denial of it which states that the motion "to prevent the introduction of evidence concerning the prior case in Superior Court is DENIED and such evidence gets to be presented to the jury." The purpose of the evidence, according to the court's order, was to prove the existence of the agreement to remove the incorrect references from credit agencies' records and to show that the bank's actions and inactions were not the result of negligence, but of malice or wilful intent to make a false credit report.[1] "[I]t is incumbent upon [Barnett], as appellant[ ], to provide this Court with a record from which we can

---

[1] In addition to the cases cited by the trial court, see also, e.g., *Langlois v. Wolford*, 246 Ga. App. 209, 212 (2) (539 SE2d 565) (2000); *Time Warner v. Six Flags*, supra at 351 (3) (c).

ascertain whether the trial court correctly ruled upon [its motion], and mere assertions of error in [its] brief do not suffice. In the absence of a sufficient record, we must assume that the trial court's ruling was proper." (Footnote omitted.) *Galloway v. Linnell*, 242 Ga. App. 221-222 (1) (529 SE2d 226) (2000). See also *Mazdak Auto Towing &c. v. Midcontinental Group*, 231 Ga. App. 859, 860 (2) (501 SE2d 44) (1998).

3. The fourth enumeration of error is not supported in the brief by citation of authority or argument and is deemed abandoned. Court of Appeals Rule 27 (c) (2).

4. Finally, we consider Hazel's motion for imposition of sanctions for frivolous appeal, to which no response has been filed by Barnett.

We agree with Hazel that the only arguments presented here consisted primarily of a reargument of the weight of the evidence and witnesses' credibility, which are matters for the trial judge's discretion and the jury's determination. Therefore, we impose a penalty of $1,000 against Barnett, to be imposed upon the filing of the remittitur in the trial court.

*Judgment affirmed with direction. Eldridge and Miller, JJ., concur.*

DECIDED OCTOBER 11, 2001.

*Kenneth R. Carswell*, for appellant.
*Leaphart & Johnson, James G. Johnson, Jr.*, for appellee.